Hon. PIERPOINT ISHAM, ⎫
Hon. MILO L. BENNETT, ⎭ Assistant Judges.

---

## John H. Peck v. Ashley Hibbard.

*Discharge in Bankruptcy in a foreign country, its effect. Foreign Laws.*

A promissory note, made and executed in the province of Canada and *payable generally*, that is, no specified place of payment being mentioned in the note, is to be treated as a note of that place, and the rights, duties, and obligations, growing out of it, are to be determined by the laws of that province.

And if the maker of the note is regularly discharged as a bankrupt, under the laws of that province, so that such discharge in bankruptcy pleaded in bar, would be a good defense to the note, in that province, then also will that discharge be equally a bar to a suit on the note in this state; and it is immaterial

Peck *v.* Hibbard.

whether the maker was domiciled in this state, or in that province, at the time of the discharge; for whatever will be a good defense by the laws of that province, where the note was given and payable, will be a good defense, wherever and by whomsoever the note may be prosecuted.

The note in suit, was indorsed to the plaintiff after the proceedings in bankruptcy had been commenced in Canada, and after the note had been presented and allowed under those proceedings: this would place the claim within the jurisdiction of the court in that province; and it is not competent for a party to defeat the operation of those laws, by a subsequent indorsement of the note to a citizen of another country; and the plaintiff, as indorsee, took the note, subject to every defense existing against his immediate indorsers; and the discharge in bankruptcy pleaded in bar was held to be equally a defense to this suit, whether we apply the rule applicable to a foreign discharge in bankruptcy, or the rule applicable to a discharge under state insolvent laws.

The laws of a foreign country must be stated in the plea and proved as facts.

ASSUMPSIT upon a promissory note.

The defendant pleaded several pleas in bar, to one of which the plaintiff replied specially; to which replication the defendant demurred. The facts in the case sufficiently appear in the opinion of the court.

The County Court, September Term, 1852,—POLAND, J., presiding,—*pro forma* adjudged the replication insufficient, and rendered judgment for the defendant.

Exceptions by the plaintiff.

*W. W. Peck* for plaintiff.

I. The claim being negotiable paper, the plaintiff not a citizen of Canada, when he purchased, and having purchased for value and without notice of the bankrupt proceedings, is not affected by the discharge. His non-residence exempted him from their jurisdiction, and the fact that the note was past due when he received it, was not notice of the existence of the proceeding, the discharge not having been then granted. Had he taken with notice, he might be bound by acquiescence. *Baker* v. *Wheaton*, 5 Mass. 509. *Watson* v. *Bourne*, 10 Mass. 337. *Braynard* v. *Marshall*, 8 Pick. 174. *Ogden* v. *Saunders*, 12 Wheat. 362–3. *Blackman* v. *Green*, 24 Vt. 17.

II. The law under which the discharge was obtained, was passed after the contract was made, and the discharge impaired the obligation of the contract.

Such laws are repugnant to our institutions; discharges under them are recognized in our courts, if at all upon the ground of comity alone; comity never prevails against the policy of law, which exists in the jurisdiction, wherein the discharge is plead, and which is foreign to that wherein it was obtained.

If the plaintiff will be taken to have had constructive notice of the proceedings, when he received the note, and to have assented to them, they would not bind him being a nullity. *Kimberly* v. *Ely*, 6 Pick. 440. *Agnew* v. *Platt*, 15 Pick. 417.

III. If the replication is insufficient, the pleas are bad *in substance.* The act under which the supposed discharge was obtained, being foreign should have been recited in the pleas, and the steps taken under them averred; so that it might be seen from the pleas that there were such acts and that the steps averred to have been taken under them were duly taken; and that the plaintiff traverses the existence of the acts. Gould's Pl. Chap. 3 § 16.

The pleas merely state that there were such acts, but do not set them forth. The validity of the proceedings averred to have been taken under them cannot be seen.

*Smalley & White* for defendant.

It is a general rule that a discharge from a contract, according to the law of the place where it is made, or where it is to be performed, is good every where and extinguishes the contract. *Hempstead* v. *Reed*, 6 Conn. 480. *Hicks* v. *Brown*, 12 Johns. 142. *Baker* v. *Wheaton*, 5 Mass. 509. *Potter* v. *Brown*, 5 East 124. *Matthews* v. *Bush*, 16 Johns. 233. *Sherrill* v. *Hopkins*, 1 Cowen 103. *Blanchard* v. *Russell*, 13 Mass. 1. *Watson* v. *Bourne*, 10 Mass. 337.

Whether between citizens, or between a citizen and a foreigner, or between foreigners. Story's Confl. of Laws 281 § 340. 5 East 124. 13 Mass. 1. 1 Cowen 103. 12 Johns. 142, above cited.

There are however some cases, in which a more limited doctrine would seem to be laid down. 5 Mass. 511. 10 Mass. 337.  Story's Confl. of Laws 281 § 340; 284 § 343; 285 § 344; 345 § 346.

But the doctrine of these cases does not affect this case; for it is wholly inapplicable to contracts and discharges in foreign coun-

tries, which must be decided upon principles of international law. Story's Confl. of Laws 283 § 341.

And in the 8 Pick. 197, it would seem that if the application for the benefit of the law, had been made before the transfer of the note, had been made (as in this case) the cause would have been decided differently.

This contract was made in Canada, between citizens and parties of and in Canada, and the *lex loci* became a part of the contract the same as if the law had been spread out upon the face of the contract. 16 Johns. 249, 250 and 251. 1 Cowen 107 and 108.

When the plaintiff took this note of Pierce & Son, his indorsers, it was over due about two years, and he acquired no more rights than they then had in the note. He took it subject to all the objections and equities to which it was liable in the hands of his indorsers, Pierce & Son. Bayley on Bills 82, and notes.

The opinion of the court was delivered by

ISHAM, J. The questions in this case arise upon a demurrer to the replication. The action is in assumpsit on a promissory note dated March 18, 1848, executed by the defendant and his copartner, and delivered to the payee at Montreal, in the province of Canada, in which place the makers and payee resided. The defense rests upon the validity of a discharge in bankruptcy granted by the courts in that province, which is set forth, with the proceedings under which it was obtained, in the special pleas in bar. From the facts admitted by the demurrer, it appears that the note was indorsed by the payee to James & Co., and by them to Messrs. Pierce & Son, all of whom were residents of that province, and that while the note was in their hands, it was presented to, and allowed by the court under the proceeding in bankruptcy. It also appears that before the defendant's final discharge, and after the note had matured, it was transferred in this state, for a valuable consideration, to the plaintiff, who was a citizen and resident of this state, and ignorant that any proceedings in bankruptcy had been commenced, or that any defense whatever existed to the note. The general question arises, whether the defendant's discharge is a bar to this suit.

The note, is *payable generally*, that is, no specified place of payment is mentioned. It is therefore to be treated as a note of that

place, and the rights, duties, and obligations growing out of it are to be determined by the laws of that province. This rule, in relation to notes payable generally, is given and sustained by Justice STORY in his Conflict of Laws § 278, 317, 332, 343, in which he observes, " that a note made in France, and *payable generally*, will " be treated as a French note, and governed accordingly by the " laws of France, as to its obligation and construction." In the case of *Ory* v. *Winter*, 16 Martin's R. 277, the Supreme Court of Louisiana sustained the same doctrine, as held by Justice STORY, and held that when a negotiable note was made in one state, and was indorsed in another state to a citizen of the latter, the contract was governed by the law of the place where the note was given and not by the law of the place where the indorsement was made. The court observed that, " we see nothing in the circumstance of the " rights of one of the parties being transferred to the citizen of an- " other state which can take the case out of the general principle." This rule was considered as the settled law of England and America. *Slocum* v. *Pomeroy*, 6 Cranch 221. 9 Barn. & Cress. 208. *Blanchard* v. *Russell*, 13 Mass. 4. *Smith* v. *Mead*, 3 Conn. 255. *Sherrill* v. *Hopkins*, 1 Cow. 103.

In the case of *Braynard* v. *Marshall*, 8 Pick. 174, a different rule was adopted. It was there held that a note *payable generally* was payable anywhere ; so that if a note was made in one country and payable generally, and was indorsed to a citizen of another country, it is to be treated as payable to the indorsee, and as a note of the country where he was domiciled, and not subject to any discharge obtained under the laws of the country where it was executed. That case appears also to have been subsequently recognized in *Savage* v. *Marsh*, 10 Met. 594. In relation to the case of *Braynard* v. *Marshall*, Justice STORY has remarked, " that it is " difficult to perceive the ground upon which the doctrine of that " case can be maintained as a doctrine of public law, and that it " has never been propounded in any common law authority, nor " ever been supported by the opinion of any foreign jurist." Conflict of Laws § 344, 345. The soundness of this principle seems to have been demonstrated by him in his treatise on Conflict of Laws, on a review of the authorities both English and American, as well as foreign. We must regard this note, not only as having been executed, but *payable in the province of Canada* ; as much

so, as if a particular place of payment in that province, had been designated in the body of the note.

The regularity of the proceedings under which the defendant obtained his discharge has not been disputed ; nor have the general provisions of the several acts of the provincial Parliament, been denied, that in that province, the bankrupt is discharged from all claims which were proved, or proveable under the commission. We entertain no doubt, that if this defendant had been prosecuted on this note in that province by the payee, or by the indorsees resident there, the discharge in bankruptcy which is pleaded in bar, would be a good defense. We are satisfied also, that the discharge is equally a bar to the claim of this plaintiff on the note ; and that it is immaterial, whether he was domiciled in this state, or in that province at the time of the discharge. Whatever will be a good defense, by the laws of that province, where the note was given and payable, will be a good defense, wherever and by whomsoever the note may be prosecuted.

This rule depends upon those principles of comity which one nation is bound to apply towards the laws of another, when they are brought into question. It is in no way affected by the provisions of our constitution, or of any policy which may arise from the mutual relation existing between these states. Justice STORY's Conflict of Laws § 279, 340, says, " that the general rule is equally " well settled, that a defense which is good by the law of the place " where the contract was made, or was to be performed, is of " equal validity in every other place, where the claim may be pros- " ecuted, whether it operates *between citizens of that country, or be-* " *tween a citizen and a foreigner, or between foreigners.*" In the case of *Green* v. *Sarmiento,* 1 Peter's C. C. R. 74, Justice WASH- INGTON observed, " that the law of the country where a contract " is made is the law of the contract, wherever performance is de- " manded, and that the same law which creates the charge will be " regarded, if it operate a discharge of the contract." Ch. KENT, 2 Kent's Com. 574, has remarked, " that the discharge of a debtor " under the bankrupt or insolvent laws of the country where the " contract was made, and in cases free from partiality and injustice, " is a good discharge in every other country and pleadable in bar." In *Smith* v. *Mead,* 3 Conn. 253, this doctrine was recognized and applied in an action on a note executed in Canada and payable gen-

erally, though the parties were residents in New York. This point in the case has not been questioned, whatever may have been done in a question arising on a construction of our constitution. *Harrison* v. *Edwards*, 12 Vt. 651. *D'Soby* v. *D'Laistree*, 2 Har. & John. 193. The authorities in England are uniform in the adoption of the same rule. It was so held by Lord MANSFIELD, in *Ballentine* v. *Golding*, and by Lord ELLENBOROUH, in *Potter*, v. *Brown*, 5 East 124. In that case, the debt was contracted in Maryland, where the defendant resided, and his discharge under the bankrupt law of this country passed in 1800, was held valid against the plaintiff, though his residence was in England. That case has been considered as having settled the law in the English courts, and is a decisive authority in sustaining the validity of the discharge pleaded in bar in this suit, even if the plaintiff had been the owner of the note at the time it was given, and had his residence in this state.

In the case of *Harrison* v. *Sterry*, 5 Cranch 289, it was held, that an assignment, under the bankrupt law of a foreign country, cannot of itself operate as a legal transfer of property in this country, so as to prevent an attachment of the same by the creditors of the bankrupt resident here. The principle of that case, however, can have no effect on this question, as that is a mere question of priority, depending upon the law of the place where the property lies, and forms no part of the contract, and in no way determines what shall be a valid discharge of the defendant's liability.

We are satisfied, upon principle as well as authority, that at common law, when a note is executed and payable in a foreign country, and a regular discharge in bankruptcy has been obtained by the debtor resident there, the discharge will constitute a valid defense to the note, wherever the creditor may be domiciled, or wherever the note may be prosecuted. The cases in this country, in which this subject has been considered to any great extent, have arisen under the insolvent laws of the different states. Under those laws, the question has arisen, to what extent such discharges are valid against creditors who were citizens of other states, and who, by no act of their own, have waived their extra-territorial immunity, and submitted themselves or their claim to the laws of that state. Since the cases of *Sturges* v. *Crowningshield*, 4 Wheat. 122 ; *McMillen* v. *McNiel*, 4 Wheat. 209, and *Ogden* v. *Saunders*,

12 Wheat. 358, the rule has been generally adopted, that a discharge under the insolvent laws of a state where the contract was made, will not be considered a valid discharge of a debt, if the creditor was a resident of another state. Such laws are considered as imparing the obligation of contracts, when they affect contracts made out of the state, or a citizen not a resident of the state where the discharge is granted. Justice STORY, Conflict of Laws § 341, observed, " that those cases have arisen under the peculiar struc-" ture of the constitution of the United States, prohibiting the states " from passing laws impairing the obligation of contracts. But in " relation to the doctrine of all those cases, he says, it is wholly " inapplicable to contracts and discharges in foreign countries,which " must, therefore, be decided upon general principles of interna-" tional law." This difference between the two cases is apparent ; for the legality of those acts of the provincial Parliament, and their universality is not affected or limited by that, or any other provision of our constitution. Their binding and universal obligation rests upon those principles of comity, which convenience and commercial relations have introduced and established. Upon those principles, we think, the discharge, granted in the country where the note was executed and payable, is a valid defense in this suit.

We are satisfied also, that the result would be the same, if we were to apply to this case the rule adopted in this country, in relation to discharges under state insolvent laws. In the case of *Braynard* v. *Marshall*, 8 Pick. 174, the insolvent's discharge was held inoperative, on the ground *that the note was indorsed to the plaintiff, a citizen of Massachusetts, before the defendant's application was made for his discharge under the insolvent law of New York.* The plaintiff's right as a creditor, in that case, was perfected *before the application was made* for the debtor's discharge. PARKER, Ch. J., observed, "*that at the time of the defendant's ap-*"*plication for a discharge,* his creditor was a Massachusetts man, " and according to the case of *Baker* v. *Wheaton*, 5 Mass. 509, the " certificate would be no bar to the action." He further observed, " that a note made in New York, and indorsed to a citizen of Massachusetts, *before an application for the benefit of the insolvent law,* ought not to be discharged under the process provided by that law." It is apparent, from the language of the court, that the discharge would have been *operative*, if the indorsement had been

made after the debtor's application for his discharge under that law. That principle will subject this note to the discharge pleaded in bar in this case. The note now prosecuted was indorsed to the plaintiff by Messrs. Pierce & Son, long after the proceedings in bankruptcy had been commenced, and long after the note had been presented and allowed under those proceedings. The presentation and allowance of this note under those proceedings, placed the claim within the jurisdiction and subject to the action of the court in that province; and it is not competent for a party to defeat the operation of those laws, by a subsequent indorsement of the note to a citizen of another country. The discharge would clearly be a defense to a suit brought by Pierce & Son, on the note; equally so is it, to a suit brought by this plaintiff. The plaintiff, as indorsee, took the note, subject to every defense existing against his immediate indorsers. Whether, therefore, we apply the rule applicable to a foreign discharge in bankruptcy; or the rule applicable to a discharge under state insolvent laws, the discharge pleaded in bar is equally a defense to this suit.

Objections, however, have been taken on this demurrer to the sufficiency of the pleas in bar, and it is insisted that they are defective in not properly setting forth the different acts of the provincial Parliament under which the defendant obtained his discharge. These objections, we think, are well taken. The laws of that province are foreign laws, and must be stated and proved as facts. They must be specially set forth in the plea, that the court may judge, whether the statutes, and the proceedings under them, justify the discharge. In this respect the pleas are defective on this demurrer. The case of *Hempstead* v. *Reed*, 6 Conn. 486, is decisive on this question. The replication being a sufficient answer to the pleas, the judgment of the County Court must be reversed.

On motion, leave to amend was granted, on the usual terms.