## Case No. 5,913.

### HALE v. BALDWIN.

[1 Cliff. 511; 1 24 Law Rep. 270.]

Circuit Court, D. Massachusetts. Oct. Term, 1860.2

INSOLVENCY—DISCHARGE—CITIZEN OF ANOTHER STATE—HOW FAR BARRED.

A discharge of a debtor under a state insolvent law is invalid against a creditor or citizen

of another state who has never voluntarily subjected himself to the laws of the state where the discharge was obtained, otherwise than by the origin of his contract, and the plea of such discharge is insufficient to bar the rights of the plaintiff.

[See note at end of case.]

This was an action of assumpsit. Defendant was the maker of a certain promissory note as follows: "$2,000. Boston, February 21, 1854. Six months after date I promise to pay to the order of myself two thousand dollars, payable at Boston, value received. James W. Baldwin." The note was duly indorsed by the defendant to the order of the plaintiff [Oscar C. Hale]. The plaintiff was and always had been a citizen of Vermont, and the defendant, at the time of the making the note, was a citizen of Massachusetts. After the making of the note and before the commencement of the suit, the defendant, upon due proceedings in the courts of Massachusetts, pursuant to the insolvent laws of the state, obtained a certificate of discharge from his debts, and then afterwards appeared and pleaded this discharge in bar of this action. The plaintiff did not prove his debt against the defendant's estate in insolvency, or otherwise become a party to the proceedings.

H. C. Hutchins, for plaintiff.

The decisions are uniform that if these notes had no particular place of payment, the discharge would be no bar. Ogden v. Saunders, 12 Wheat. [25 U. S.] 213; Savoy v. Marsh, 10 Metc. [Mass.] 594. It makes no difference that the note was payable in Boston. This is a question, not where the contract was made to be performed, but whether the contract was made with a citizen of another state. Whitney v. Whiting, 35 N. H. 457; Springer v. Foster [Case No. 13,266]; Demeritt v. Exchange Bank [Id. 3,780]; Donnelly v. Corbett, 3 Seld. [7 N. Y.] 500; Woodhull v. Wagner [Case No. 17,975]; Poe v. Duck, 5 Md. 1; Frey v. Kirk, 4 Gill & J. 509; Scribner v. Fisher (dissenting opinion of Metcalf, J.) 2 Gray, 43–48; Gardner v. Lee's Bank, 11 Barb. 558; Hempstead v. Reed, 6 Conn. 480; Smith v. Parsons, 1 Ohio, 236.

F. A. Brooks, for defendant.

It is clear, upon legal authorities (excepting for the moment those cases where the state legislation is said to be limited, in this respect, by the United States constitution), that a contract discharged by the lex loci (both of making and performing the contract) is discharged everywhere, and that the citizenship of the contracting parties is immaterial. Story, Confl. Laws (3d Ed.) §§ 242, 263, 279, 280, 335; May v. Breed, 7 Cush. 38; 2 Kent, Comm. (6th Ed.) 459. The doctrine or principle seems to be, that, as contracts depend upon, and must be referred to, some legal sanction for construc-

---

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

2 [Affirmed in 1 Wall. (68 U. S.) 223.]

tion, character, enforcement, or discharge, they shall be deemed to be referred to the laws prevailing where they are made and to be performed, and to which the parties have themselves referred them, by assigning locality to them. Taking the above to be the well-settled doctrine, public or international law, the question is, whether, under the facts of this case, this doctrine is set aside, and the Massachusetts discharge shut out, because it comes under the constitutional prohibition against laws of the states impairing the obligations of contracts. Now, inasmuch as the Massachusetts insolvent laws were in force at the inception of this contract, it follows necessarily that, if contracts are by public law, referred, for their character and incidents, to the existing legislation of the country where made or to be performed, these notes were, at their date, just as defeasible by the happening of the maker's insolvency and his discharge as if such a provision had been expressly incorporated on their face; and so only the condition and circumstances of the maker have changed, but not the legal nature of the obligation which he assumed in making the notes. The obligation was in its inception defeasible in a certain event, and it had not been impaired, except by its originally inherent qualities. The proposition that this discharge contravenes the prohibition against impairing the obligation of contracts rests entirely upon the fact of the promisees not being citizens of the same state in which the contract was made and to be performed, and therefore not being affected by the conditions attached by Massachusetts laws to the contract itself, and upon the supposed authority of the leading case. Ogden v. Saunders, 12 Wheat. [25 U. S.] 213. In that case, the discharge granted in New York was pleaded in Louisiana, to a contract made in New York with a citizen of Kentucky, following the person of the creditor, and not limited to New York, as the place of performance. In Ogden v. Saunders [supra], the contract was, in the eye of law, one foreign to the sovereignty granting the discharge, while in this case it was not, though made with a citizen of another state. Same is true of Cook v. Moffat, 5 How. [46 U. S.] 295. The supreme court of Massachusetts held a discharge in a case like this one a bar. Scribner v. Fisher, 2 Gray, 43. In Donnelly v. Clark [unreported], the discharge was set up in a state foreign to the one where the contract was to be performed. In Demeritt v. Exchange Bank [supra], the law there under discussion was one regulating procedure in state courts, and the court held such a law inapplicable to United States courts, because they were not bound by procedure laws of state courts. It is in derogation of state rights to hold that a state cannot attach incidents to a contract made and to be carried out within its limits, as well as give force and effect to it.

Bank of U. S. v. Lyman, 20 Vt. 666, was also cited.

CLIFFORD, Circuit Justice. The force and effect of the insolvent laws of a state have so often been considered, that any extended discussion of the principles originally supposed to be involved in the question under consideration would be useless, as I am of the opinion that the question presented is authoritatively settled by the decisions of the supreme court. All agree, I suppose, that the decisions of the supreme court are authority in all questions involving the construction of the constitution of the United States; and if so, it would be difficult to maintain the proposition that they are not so in cases of this description. Whether the binding obligation of those decisions is conceded or not, in other jurisdictions, it must certainly be admitted in this court, and it is vain to suppose that they will not be followed here in all cases where they apply. Discussion upon the general subject to which this question appertains has become so nearly exhausted that the more important inquiry now is, as to what has been decided; and it is not a little remarkable that most of the diversity in the recent decisions has grown out of the difficulty in answering that inquiry. One of the leading cases upon the subject is that of Sturgis v. Crowninshield, 4 Wheat. [17 U. S.] 122. Recurring to the facts of that case, it will be seen that the defendant was sued in this district as the maker of two promissory notes, both dated at New York and made payable to the plaintiff, and the suit was brought after he had been discharged in New York under the insolvent laws of that state, which, in their terms, applied to past as well as future contracts. He pleaded his discharge in bar of the action, and the plaintiff demurred to the plea. Certain questions arose in the circuit court on which the judges were opposed in opinion, whereupon the questions were certified to the supreme court for their final decision. Able counsel were employed on both sides in the supreme court, and the court decided that, since the adoption of the constitution of the United States, a state has authority to pass a bankrupt law, provided such law does not impair the obligation of contracts within the meaning of the constitution, and provided there be no act of congress in force to establish a uniform system of bankruptcy conflicting with such law; but also held that the act pleaded in the case, so far as it attempted to discharge the contract on which the suit was instituted, was a law impairing the obligation of contracts within the meaning of the constitution of the United States; and that the plea of the defendant was not a good and sufficient plea in bar of the action. Another case, involving the same question and some others, was also presented to the supreme court for decision at the same session. M'Millan v. M'Neill, 4 Wheat. [17

U. .S.] 200. As appears from the statement of the last-named case, the contract on which the original suit was brought was made in Charleston, in the state of South Carolina, and both parties resided there at the time the contract was made; but the original defendant subsequently removed to New Orleans, in the state of Louisiana, and there obtained a certificate of discharge from his debts, under the insolvent laws of that state, which were passed prior to the date of his contract. He was also one of a firm doing business in Liverpool, and a commission of bankruptcy was issued there, both against him and his partner, and they obtained certificates of discharge. Those certificates he pleaded in bar of this action, and the plaintiff demurred to the plea. Two points were ruled by the court: First, that the circumstance that the state law, under which the debt was attempted to be discharged, was passed before the debt was contracted made no difference in the application of the principle; and, secondly, that a discharge under a foreign law was no bar to an action on a contract made in this country. Whatever diversity of opinion there may be as to the correctness of the decision in the leading case, it must, nevertheless, be admitted that the rules of law laid down in the conclusion of the opinion are plain and clear. Speaking of the other case, Mr. Justice Johnson, in Ogden v. Saunders, 12 Wheat. [25 U. S.] 279, says it is nothing more than this, that insolvent laws have no extra-territorial operation upon the contracts of other states; and he maintains that the principle is applicable as well to the discharges given under the laws of the states as of foreign countries, and that the anterior or posterior character of the law under which the discharge is given, with reference to the date of the contract, makes no discrimination in the application of that principle. Some misapprehension existed for a time on the point, whether the final opinion delivered by Mr. Justice Johnson in that case was, in point of fact, the opinion of a majority of the court, but I do not see any ground for doubt upon the subject. He states explicitly in the outset that he is instructed by the majority of the court to dispose of the cause, and explains that the majority on the occasion is not the same as that which determined the general question previously considered. Three propositions were laid down in that case, and it is a matter not now open to controversy that they severally received the sanction of a majority of the court: (1) That the power given to the United States to pass bankrupt laws is not exclusive. (2) That the fair and ordinary exercise of that power does not necessarily involve a violation of the obligation of contracts multo fortiori of posterior contracts. (3) But when, in the exercise of that power, the states pass beyond their own limits and the rights of their own citizens, and act upon the rights of the citizens of other states, there arises a conflict of sovereign power, and a collision with the judicial powers granted to the United States which renders the exercise of such a power incompatible with the rights of other states and with the constitution of the United States. His statement of the question involved in the case, and the answer given to the same, are quite as explicit as the third proposition just recited. He states the case thus: the question now to be considered is, whether the discharge of a debtor under a state insolvent law would be valid against a creditor or citizen of another state who has never voluntarily subjected himself to the state laws otherwise than by the origin of his contract; and he answers the question by saying, I therefore consider the discharge under a state law as incompetent to discharge a debt due a citizen of another state; and it was upon that ground that a majority of the court determined that the plea of a discharge set up in that case was insufficient to bar the rights of the plaintiff. Attention is very properly called to the fact that the discharge in that case was granted in New York, and was pleaded in Louisiana to a contract made in New York without limitation as to the place of performance. Conceding that to be so, still the suggestion cannot have weight, because the decision of the court is placed upon the ground of citizenship; and if that be the true criterion, as it undoubtedly is, then it is clear that the place of performance is a matter wholly immaterial. That the supreme court intended to settle the law as laid down in the conclusion of the final opinion of Mr. Justice Johnson is placed beyond doubt by the decision of the same court in the case of Boyle v. Zacharie, 6 Pet. [31 U. S.] 348. Marshall, C.J., says in that case, that the judges who were in the minority of the court upon the general question as to the constitutionality of state insolvent laws concurred in the final opinion disposing of the case. That opinion, therefore, says the learned chief justice, is to be deemed the opinion of the other judges, who assented to that judgment; and he adds, that whatever principles are established in that opinion are to be considered no longer open for controversy, but the settled law of the court. Whenever the question has been presented to the supreme court, since that opinion was pronounced, the answer of the court has uniformly been that the question depended upon citizenship; and accordingly as it was held, in the case of Suydam v. Broadnax, 14 Pet. [39 U. S.] 75, that a certificate of discharge cannot be pleaded in bar of an action brought by a citizen of another state in the courts of the United States or of any other state than that where the discharge was obtained. Judge Story says, in the case of Springer v. Foster [Case No. 13,266], that the settled doctrine of the supreme court is, that no state insolvent laws can discharge the obligation of any contract made in the state, except

such contracts as are made between citizens of that state. To support that proposition he refers to the case of Ogden v. Saunders [supra], and remarks, without qualification, that it was subsequently affirmed in Boyle v. Zacharie [supra], where there was no division of opinion. Confirmation of the fact that such was his opinion, if any be needed, may be found both in his Commentaries on the Constitution and in his valuable work entitled "Conflict of Laws." In the former, he says the result of the various decisions of the supreme court on the subject is: (1) That state insolvent laws apply to all contracts within the state between citizens of the state. (2) That they do not apply to contracts made within the state between a citizen of a state and a citizen of another state. (3) That they do not apply to contracts not made within the state. His views, however, are even better expressed in the last-named treatise, where he says: "Under the peculiar structure of the constitution of the United States prohibiting the states from passing laws impairing the obligation of contracts, it has been decided that a discharge under the insolvent laws of the state where the contract was made will not operate as a discharge of the contract, unless it was made between citizens of the same state"; and he adds: "It cannot therefore discharge a contract made with a citizen of another state." 3 Story, Comm. p. 256, § 384; Story, Conf. Laws, p. 573, § 341. Chancellor Kent says the discharge under a state law will not discharge a debt due to a citizen of another state who does not make himself a party to a proceeding under the law. It will only operate upon contracts made within the state between its own citizens or suitors subject to state power; and the supreme court held, in Cook v. Moffat, 5 How. [46 U. S.] 308, that state insolvent laws "could have no effect on contracts made before their enactment or beyond their territory." 2 Kent, Comm. (9th Ed.) p. 503. Some modification of the doctrine, as stated in the authorities cited, was attempted to be made by a majority of the supreme court of Massachusetts, in the case of Scribner v. Fisher, 2 Gray, 43, and it was there held that a certificate of discharge under the insolvent laws of that state is a bar to an action on a contract made by a citizen of the state with a citizen of another state who does not prove his claim under those laws, if the contract, by its express terms, is to be performed in that state. Metcalf, J., however, delivered a very able dissenting opinion, approving the doctrine that state insolvent laws cannot discharge the obligation of contracts made with the citizens of other states. Shortly after the volume containing that decision was published, the same question came before the circuit court for this district, and my immediate predecessor held the opposite opinion, stating that he considered the settled rule to be, that a state law cannot discharge or

suspend the obligation of a contract, though made and to be performed within the state, when it is a contract with a citizen of another state. Additional authorities were also cited by the learned judge in support of the proposition; and it will be found upon examination that every one of them supports the point to which they were cited. Woodhull v. Wagner [Case No. 17,975]; Donnelly v. Corbett, 3 Seld. [7 N. Y.] 500; Poe v. Duck, 5 Md. 1; Demeritt v. Exchange Bank [Case No. 3,780]. Since that decision was made, the same conclusion has been reached by the supreme court of Connecticut, and also by the supreme court of Maine, where the whole subject has been very thoroughly examined and very ably discussed. Anderson v. Wheeler, 25 Conn. 607; Felch v. Bugbee, 48 Me. 9. Nothing, therefore, can be more certain, as it seems to me, than the conclusion, that the question presented in this case has already been settled by the supreme court. It was certainly so regarded by the court in Cook v. Moffat [supra], as well by Mr. Justice Grier, who gave the opinion, as by the chief justice, and the other justices who expressed their opinions on the occasion. According to the agreement of the parties, the defendant must be defaulted.

[NOTE. On writ of error, the supreme court affirmed this judgment in an opinion by Mr. Justice Clifford, who said that the insolvent laws of one state cannot discharge the contracts of citizens of other states, because they have no extraterritorial effect, and the tribunal sitting under them, unless the citizen of such other state voluntarily becomes a party to the proceeding, has no jurisdiction in the case. 1 Wall. (68 U. S.) 223.]