ISAAC N. PHELPS and Others, Plaintiffs, *v.* ROBERT B. BORLAND, Defendant.

No. 2.

*Bankruptcy — effect of a discharge granted in a foreign country as against citizens of this country — it becomes effective if they prove their debts and accept their proportion of the assets.*

This action was brought by the plaintiffs, residents and citizens of the United States, upon a bill of exchange, payable in London, drawn in New York by the defendant upon and accepted by a firm residing and doing business in Liverpool. After the acceptance of the bill the drawees became bankrupt and were discharged by their creditors by virtue of a compromise accepted by them as prescribed by the English bankrupt act. The plaintiffs proved the indebtedness due upon the draft in those proceedings and accepted their proportional part of the composition paid by the drawees.

*Held,* that by so doing they rendered the discharge acquired by the drawees a

complete and effectual extinguishment of the debt and thereby released the defendant, the drawer, from all liability upon the draft.

*It seems,* that if the plaintiff had not proved the debt and accepted the composition the discharge would have been ineffectual as to them.

MOTION by the plaintiffs for a new trial upon exceptions, ordered to be first heard at the General Term, after a verdict had been directed in favor of the defendant.

*Thomas H. Hubbard,* for the plaintiffs.

*Frank D. Sturges,* for the defendant.

DANIELS, J.:

The action was against the defendant as the drawer of a bill of exchange. The bill was dated March 28, 1879, and was drawn upon Samuel Johnston & Co., of Liverpool, for the sum of 2,750 pounds sterling. It was accepted by the drawees, payable in London. The bill and the acceptance were in the following form:

Exchange for £2,750. First.

[Stamp P. S. & Co., No. 956.]   NEW YORK, *March* 28, 1879.

Sixty days after sight of this first of exchange, second and third of same tenor and date being unpaid, pay to my order the sum of twenty-seven hundred and fifty pounds sterling for value received and charge to account as advised.

R. B. BORLAND.

To Messrs. SAMUEL JOHNSTON & Co., *Liverpool.*

No. 393.   Payable in London.

No. 1666.   LIVERPOOL, *Sept.,* 1879.

[Three stamps, amounting to twenty-eight shillings, canceled by mark of Union Bank of London, 6 June, '79.]   Accepted, due 10 June, 1879, payable at Messrs. William Deacons & Co., London.

SAMUEL JOHNSTON & CO.

12–6 D. S. N.

10 June, 1879.

Indorsed: R. B. BORLAND.   Pay to the order of the Union Bank of London.

Rec'd per pro. of the Union Bank of London.

J. WARREN, *Manager.*

When it became due the acceptors failed to pay it and the defendant was in form charged by the ordinary protest and notice. He relied upon the fact as one of his defenses that he drew the bill as agent of the drawees, and that his relation to it was known to the plaintiffs when they received it. But that defense has been disposed of adversely to him in an action by the same plaintiffs upon another bill drawn by him in a similar form and upon the same drawees.*

A further defense consisted in the fact that after the bill had been drawn and accepted the acceptors had been discharged by their creditors under the authority of the English bankrupt laws, in which the plaintiffs proved this indebtedness and received their proportionate part of the composition paid by the acceptors. These facts were proved upon the trial and were held by the court to create a legal defense in the defendants favor, and accordingly a verdict for him was directed in the action. Whether this direction can be sustained upon these facts is the controlling point to be determined in the disposition of this motion.

The bankrupt proceedings were commenced and carried on under the English bankrupt act of 1869, which was given in evidence upon the trial. By that act the creditors of the bankrupt have been empowered to discharge him from his debts upon a compromise or composition accepted by them from him in satisfaction of their demands, and the proceeding provided for has been declared to be binding on all the creditors whose names and addresses and the amount of the debts due to whom are shown in the statement of the debtor produced to the meeting of the creditors, at which their resolution shall be adopted for the adjustment of their demands and the debtors discharged. And by a concession made upon the trial the fact was established that the statement required by the act was made by the debtor and presented at the meeting of his creditors containing the names and addresses of the creditors to whom the debts were due, including the names of the plaintiffs and this particular debt in question. The creditors who were present, but among whom the plaintiffs were not included, accepted the composition offered by the acceptors of the bill and in consideration thereof granted them a discharge from their debts.

---

* *Ante*, page 362.

Under the English rule, as it was stated in *Ellis* v. *McHenry* (L. R., 6 C. P., 228), this discharge would operate as a complete and effectual extinguishment of the debt, not only in England but elsewhere. And a like view was either incidentally or directly taken of the law in *Murray* v. *De Rottenham* (6 Johns. Ch., 52); ·*Peck* v. *Hibbard* (26 Vt., 698); *Very* v. *McHenry* (29 Me., 206); *LeRoy* v. *Crowninshield* (2 Mason, 151); *Green* v. *Sarmiento* (1 Pet. C. C., 74; 2 Kent [7th ed.], 476, 477; Story on Conflict of Laws [5th ed.], § 335).

This principle was held to be deduced from the well established rule that the force and effect as well as the validity of a contract are to be determined by the laws of the country where by its terms it is · to be performed. It has been often considered by the courts, and this rule has been deemed to be well established both by reason and authority (*Smith* v. *Smith*, 2 Johns., 235; *Mather* v. *Bush*, 16 id., 233; and *Sherrill* v. *Hopkins*, 1 Cow., 103, 108), where it was stated " that the law of the place where the contract is made is to control it, unless it appear upon the face of the contract that it was to be performed at some other place, or was made with reference to the laws of some other place." (*Hibernia Nat. Bank* v. *Lacombe*, 84 N. Y., 367, 378.)

But neither the Federal courts nor the courts of this State in their more recent adjudications have sanctioned this broad principle, giving general effect to discharges obtained by a debtor under the provisions of the English bankrupt laws. It has been considered more particularly with reference to the effect of discharges obtained under the insolvent laws of the States, and an effort has been made for that reason to distinguish these adjudications from the general principle already mentioned, because of the restraint imposed upon State legislation by the Federal Constitution. But this restraint is applicable only to contracts entered into before the enactment of the insolvent law of the State, relied upon as affecting them. Where the contract is entered into before the enactment of the State insolvent law, there the State has no authority to discharge it in that manner, for it can pass no law impairing the obligation of a contract. But where the contract is entered into subsequent to the passage of the insolvent law, then the Constitution of the United States in no way interferes with the act, but its effect is to be other-

wise determined by the courts, and it has already been so considered
in cases which must be accepted as controlling authority over this
subject.    In the consideration of the effect of such laws it has been
determined that the discharge of the debtor under their provisions
will include only debts and contracts existing against the debtor in
favor of another citizen or inhabitant of the same State, and that
the act will not include a debt, or contract entered into in the State
of the debtor's residence, owing to or with a resident or citizen of.
another State.    As to the latter class the discharge under it will be
ineffectual, while as to the former the demands will be discharged
and extinguished. · (*Scribner* v. *Fisher*, 2 Gray, 43 ; *Fiske* v. *Fos-
ter*, 10 Met., 597 ; *Hale* v. *Baldwin*, 1 Cliff., 511, 517 ; affirmed,
1 Wall., 223.)

The principle upon the effect of which the State insolvent laws
have been so far restrained in their operation as to exclude debts
owing to and contracts in favor of citizens of other States, is " that
insolvent laws have no extra-territorial operation upon the contracts
of other States ; that the principle is applicable as well to the dis-
charges given under the laws of the States as of foreign countries ;
and that the anterior or posterior character of the law under which
the discharge is given with reference to the date of the contract,
makes no discrimination in the application of the principle."
(*Ogden* v. *Saunders*, 12 Wheat., 213, 272.)    And if this principle
can properly be made applicable to the insolvent laws of the States,
the reason upon which it has been founded will render it equally as
applicable to the discharge of a debtor under the bankrupt laws
of a foreign country, and it was so considered in the case just refer-
red to.

The English ·rule was regarded as having grown up under the
policy of Great Britain as a commercial nation, but it was declared
in the prevailing opinion of the court to be " perfectly clear that
in the United States a different doctrine has been established."
(Id., 360.)    And for that reason a creditor in the· United States
may proceed to seize and appropriate the property of the debtor to
the payment of his debts, when that may be found within the
jurisdiction of any of the tribunals of this country, although he
may have been discharged as a bankrupt by proceedings instituted
and carried on elsewhere.  (*Saunders* v. *Williams*, 5 N. H., 213.)

If the discharge of the bankrupt, obtained in the country of which he may be a resident at the time of the making of the contract, and where the proceedings themselves may be carried on, could operate as a discharge of the debt, such an attachment or seizure of the debtor's property within the jurisdiction of the courts of this or any other State would not be permitted. It is only because the discharge is entitled to no extra-territorial effect that the creditor is at liberty to collect his debt in this manner out of the property of the bankrupt which may be found within the jurisdiction of the tribunals of the creditor's domicil, when that may be different from the residence and domicil of the debtor. The view that the English rule concerning the effect of a bankrupt discharge has not been adopted in this country has been regarded as the law by Parsons in his work on Bills and Notes, for he considered that "the tribunals of England differ in this respect from that of the continent of Europe, and from the rules laid down in the American cases." (2 Parsons on Bills, etc., 360.)

While, therefore, the law of the place of the contract is in general terms to have the effect attributed to it as that has been already stated, still it is not entitled to be extended so far as to maintain the legality and effect of a foreign bankrupt discharge against creditors to whom the bankrupt may be indebted, who are at the time citizens and residents of this State. The English rule has been here so far abridged as to render the discharge itself inoperative against such creditors, and consequently the proceedings which have been relied upon; although they conformed to the English bankrupt act, in and of themselves constituted no defense for the reason that they were not binding upon the plaintiffs as creditors.

The plaintiffs not being bound by the bankrupt proceedings were under no obligation either to prove their debt or to accept the composition proposed to be paid by the acceptors of this bill. They did, however, voluntarily make themselves parties to the bankrupt proceedings by proving the debt now in suit and accepting the composition offered by the bankrupt, and in that manner, without being obliged so to do, they released and discharged the acceptors of this bill. In taking these proceedings they brought themselves within the authority of the case of *Gardner* v. *Oliver Lee's Bank* (11 Barb., 559). There the creditors in a similar manner made

themselves parties to and received a portion of the debtor's estate under insolvent proceedings carried on in the State of Massachusetts. And as the creditor at the time resided in this State, and within the rule already mentioned was in no manner affected by the insolvent proceedings under the statutes of Massachusetts, it was held to have deprived itself of its right to proceed against the drawer of the paper by having voluntarily made itself a party to those proceedings and receiving the dividend which was paid under them. No reason can be perceived for distinguishing this case from the one now before the court. If the creditor deprived itself there of the right to recover against the drawer by voluntarily becoming a party to the proceeding and accepting the distributive portion of the estate of the insolvent under it, the plaintiffs have done the same in this instance. This authority, in view of the facts as they have been made to appear, must be regarded as decisive of their rights, and the result is that their application for a new trial must be denied and judgment ordered for the defendant on the verdict.

DAVIS, P. J., and BRADY, J., concurred.

Motion for new trial denied. Judgment ordered for defendant on verdict.